IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
DEVEARL L. BACON,               )
                                )
          Plaintiff,            )
                                )
     v.                         )  Civ. No. 06-267-JJF
                                )
WARDEN CARROLL, DEPUTY          )
WARDEN MCGUIGAN, JOE            )
HUDSON, LT. CARROTHERS,         )
LT. LEGATES, LT. BOONE,         )
LT. PROFACI, LT. FORBES,        )
SGT. SNEAD, C.M.S.,             )
F.C.M., and DOCTOR TAMMY        )
KASTRE,                         )
                                )
          Defendants.           )
```

**MEMORANDUM ORDER**

Plaintiff Devearl L. Bacon ("Bacon"), an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears pro se and on May 3, 2006, was granted in forma pauperis status pursuant to 28 U.S.C. § 1915. (D.I. 3.) The Court now proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

For the reasons discussed below, the complaint will be dismissed for want of jurisdiction. Alternatively, the complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), and the Court will decline to exercise supplemental jurisdiction.

**I.    THE COMPLAINT**

Plaintiff alleges that on May 1, 2004, as he was leaving the

Building 24 "B" dining hall, he slipped and fell on a wet spot on
the floor, and injured his lower back. (D.I. 2, ¶ 14.) In his
"Statement of Claim" Plaintiff lists his claims as 1. deliberate
indifference, 2. right to access, and 3. freedom of speech.
(D.I. 2, ¶ IV.) The body of the complaint contains four counts.
In Count I, Plaintiff alleges that Defendants' negligent acts by
failing to warn him of hazardous and unsanitary areas caused him
injury, constitute the tort of negligence, and caused him
emotional distress under the laws of the State of Delaware. Id.
at ¶ 41.

Count II is entitled, "Converion [sic], Interference with
Prospective Advantage, Bad Faith Liability." (D.I. 2 at 12.)
Plaintiff alleges that the acts and omissions of the Defendants
in refusing and/or failing to provide to him exculpatory records
such as photographs and x-rays, constitute the torts of
conversion, interference with prospective advantage, negligence,
and bad faith under the laws of the State of Delaware. Id. at ¶
42.

Count III is entitled, "Negligence," and alleges that as a
result of his fall, Plaintiff incurred medical expenses, will
require future medical attention, and damaged his ability to earn
income. Id. at 14, ¶¶ 34, 35, 36. Plaintiff alleges that
Defendants' "acts of discovery and medical actions in which [he]
was severely injured" constituted the tort of negligence under

2

the laws of the State of Delaware.  Id. at ¶ 43.

Count IV is entitled "Negligence, Malpractice, Medical Indifference and Emotional Distress."  (D.I. 2 at 15.) Plaintiff alleges that CMS and FCM failed to provide adequate medical treatment for his serious injuries which constitute the torts of negligence, malpractice, medical indifference, and infliction of emotional distress under the laws of the State of Delaware.  Id. at ¶ 44.

Plaintiff specifically alleges as follows:  After he fell, Lt. Carrothers ("Carrothers") told Plaintiff to "stay on [the] floor until [the] nurse gets here."  Id. at ¶ 14.  An unnamed C/O and Sgt. Snead ("Snead") also told Plaintiff not to move.  Id. Plaintiff was taken to the nurses' office and a nurse ordered Plaintiff something for pain.  Id.  Carrothers ordered his staff members to write an incident report.  Id.  Plaintiff filed "paperwork" asking that photographs be taken of the area, and he inquired why there were no warning signs of a wet floor.  Id. at ¶ 15.  He also asked for all medical and incident reports, but no documents were provided to him.  Id.

On May 7, 2004, Plaintiff was in the area where the accident occurred, and he observed water coming from the ceiling.  Id. at 17.  Plaintiff alleges that the water "was coming from a [sic] 'outgoing sewage pipe.'"  Id.  Plaintiff "filed papers" and asked why inmates were not cautioned about the hazardous and

3

unsanitary areas, and also requested an investigation. Id. He again requested photographs of the area to preserve "evidence." Id. No photographs were taken and Plaintiff was never informed of an investigation. Id.

From May 1, 2004 through May 17, 2004, Plaintiff was administered pain medication (i.e., Ibuprofen) for lower back pain. Id. at ¶ 18. He submitted sick call slips explaining his "pain and suffering" and on May 15, 2004, he was seen by a physician and told he had swelling in his lower back and a sprain. Id. Plaintiff was prescribed "rubbing cream and pain killers", but he was required to pay for his medical treatment. Id.

On May 17, 2004, Plaintiff filed a sick-call slip and, for prison employment purposes, asked for a memo outlining his lifting restrictions. Id. While working on August 29, 2004, Plaintiff submitted a sick call slip that stated for the past three weeks he had been bending and moving, that his back was "still in pain", that he needed a renewal of his pain medication, and he requested a back x-ray. Id.

Plaintiff filed sick call slips from June 17, 2004 through January 16, 2005, for back x-rays and to receive pain killers. Id. at 19. On February 11, 2005, a back x-ray was performed, and Plaintiff was told by a nurse that the x-ray results would be ready by February 15, 2005. Id. at 20. Plaintiff was told he

4

could "see" the x-rays by submitting a sick call slip, and he
followed that directive.  Id.  In mid-April Plaintiff received a
copy of a sick call slip filed March 16, 2005, and it stated that
presently there were no x-ray results and that a doctor would
notify Plaintiff if the results were abnormal.  Id.

When Plaintiff did not "physically see" the x-ray results by
April 5, 2005, he filed a medical grievance seeking relief.  Id.
at ¶ 21.  Plaintiff spoke to the grievance investigator on May
12, 2005, and was told he could not see the x-rays.  Id.  He
alleges he has a right to see the x-rays and this "caused a [sic]
indifference."  Id.

Plaintiff alleges that as a result of the fall he sustained
serious and permanent injuries and developed a dependency on pain
killers.  Id. at ¶¶ 23-26.  He alleges that as a direct result of
not receiving the incident report or photographs of the hazardous
areas he was unable to preserve evidence.  Id. at ¶ 27.  He also
alleges that he was exposed to hazardous and unsanitary
conditions due to water falling down on a table from sewage pipe
and there being no warning signs.  Id. at ¶ 28.

Plaintiff alleges that Defendants Joe Hudson ("Hudson"), Lt.
Legates ("Legates"), Lt. Profaci ("Profaci"), Lt. Boone
("Boone"), Lt. Forbes ("Forbes"), and Carrothers refused to
preserve evidence of the hazardous area despite Plaintiff's
requests for forms, photographs and incidents.  Id. at ¶ 30.

5

Plaintiff alleges that FCM and CMS caused a "deliberate indifference" when they refused to preserve and give Plaintiff proof of his injury, despite receiving sick call slips and medical grievances filed by Plaintiff. Id. at ¶ 31. Finally, Plaintiff alleges that as a direct and proximate result of their actions, Hudson, Legates, Profaci, Boone, Forbes, Carrothers, FCM and CMS have shown bad faith by not providing Plaintiff the records or x-rays. Id. at ¶ 32.

Plaintiff asks for compensatory, consequential, incidental, actual, hedonic, and punitive damages for loss of movement, loss of time and pleasurable activities. Id. at 18-33. He also seeks a declaratory judgment, interest, attorneys fees, medical expenses, and for such other relief as he may be entitled. Id.

## II. STANDARD OF REVIEW

When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief.

Pro se complaints are liberally construed in favor of the

6

plaintiff. Haines v. Kerner, 404 U.S. 519, 520-521 (1972). The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(citing Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)). An action is frivolous if it "lacks an arguable basis either in law or in fact," Neitzke v. Williams, 490 U.S. 319, 325 (1989), and the claims "are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). Additionally, a pro se complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521 (1972)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**III. ANALYSIS**

**A.    Jurisdiction**

Plaintiff's complaint is filed on a form entitled, "Form to be Used by a Prisoner in Filing a Complaint under the Civil Rights Act, 42 U.S.C. § 1983." (D.I. 2.) Yet Plaintiff's complaint contains no claims of constitutional violations. Rather, it specifically alleges negligence under the laws of the State of Delaware. (D.I. 2, ¶¶ 41, 42, 43, 44.)

Because there is no federal question the Court must

7

determine if it has original jurisdiction by reason of diversity of citizenship. 28 U.S.C. § 1332. The complaint alleges that Plaintiff is a resident of the State of Delaware, but also alleges that the majority of the Defendants are residents of the State of Delaware. Id. at ¶¶ 2-11. There is no diversity of citizenship when the parties are citizens of the same state. 28 U.S.C. § 1332 (a)(1). Therefore, the Court does have not original jurisdiction over this matter.

Moreover, as will be discussed, this case cannot proceed because Plaintiff has not alleged facts implicating a federal question. When the complaint contains no federal question and there are no allegations of diversity of citizenship, the Court has no jurisdiction over the matter. 28 U.S.C. § 1331, 28 U.S.C. § 1332; See e.g., Manchester v. Rzewnicki, 777 F.Supp. 319, 329 (D.Del. 1991), aff'd, 958 F.2d 364 (3d Cir. 1992). There is no independent federal jurisdiction in this matter. Therefore, the complaint must be dismissed for want of jurisdiction.

**B.   42 U.S.C. § 1983**

The Court does not have jurisdiction over this matter. Alternatively, even if this Court did have jurisdiction, the case would be dismissed because Plaintiff's allegations do not rise to the level of constitutional violations. As is well known, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who

8

caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). As discussed below, Plaintiff fails to state a claim that he was deprived of a federal right.

## 1.   Slip and Fall

Plaintiff alleges that the conditions at DCC caused him to slip and fall and injure himself. He specifically refers to water leaking from the ceiling onto the floor of the dining hall.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifference to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

Plaintiff's allegations do not rise to the level of a serious deprivation. At the most, he states a claim for ordinary negligence. Unfortunately for Plaintiff, it is well established

9

that mere negligence by a state official is insufficient to state
a claim under § 1983. Daniels v. Williams, 474 U.S. 327, 329
(1986). Indeed, numerous courts are in agreement that slippery
floors do not violate the Eighth Amendment. See Flandro v. Salt
Lake County Jail, 53 Fed. Appx. 499 (10th Cir. 2002); LeMaire v.
Maas, 12 F.3d 1444, 1457 (9th Cir. 1993); Denz v. Clearfield
County, 712 F.Supp. 65, 66 (W.D. Pa. 1989); Turnstall v. Rowe,
478 F.Supp. 87, 89 (N.D. Ill 1979); Snyder v. Blankenship, 473
F.Supp. 1208, 1212-13 (D.C. Va. 1979).

Accordingly, the claim seeking damages as a result of the
slip and fall lacks an arguable legal basis, and therefore, is
dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(b) and
§ 1915A(b)(1).

## 2. Pleading Deficiency

Even if Plaintiff had stated a viable Eighth Amendment
claim, his pleading is deficient as to Warden Carroll, Deputy
Warden McGuigan, Dr. Tammy Kastre ("Dr. Kastre"), and Snead.
A civil rights complaint is adequate where it states the conduct,
time, place, and persons responsible. Evancho v. Fisher, 423
F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area
Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania
State Police, 570 F.2d 86, 89 (3d Cir. 1978)). It is apparent
from their titles that Warden Carroll and Deputy Warden McGuigan
hold supervisory positions, but it is well established that

10

supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

"'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge or acquiesced in, the deprivation of a plaintiff's constitutional rights.  Id.; see Monell v. Department of Social Services,436 U.S. 658, 694-95 (1978).  Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.  Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed.Appx. 240 (3d. Cir. 2005).

In the present case, there no allegations against Dr. Kastre alleging that she deprived Plaintiff of a federal right or that she had any personal involvement in any alleged wrongful act.

11

The only allegation against Snead is that he told Plaintiff not to move following the fall.  This allegation does not allege a constitutional violation.  Further, Plaintiff does not associate any of his allegations with either Warden Carroll or Deputy Warden McGuigan.  Finally, the complaint does not allege that either Warden Carroll or Deputy Warden McGuigan's actions or inactions were the moving force behind the harm allegedly suffered by Plaintiff or that they were deliberately indifferent to the risk of any deficient policies implemented by them.

Plaintiff fails to state a claim against Warden Carroll, Deputy Warden McGuigan, Dr. Kastre, and Snead.  The claims against them are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(b)(1).

### 3.   Preservation of Evidence

As a result of his slip and fall Plaintiff filed a grievance seeking photos of the area where he fell and copies of all medical and incident reports.  (D.I. 2, Ex. A.)  The grievance was denied.  Id.  Plaintiff filed a medical grievance asking to see his x-rays, and the grievance was denied.  Plaintiff also filed a grievance to obtain other "evidence" pertaining to his injury, and it, too, was denied.  Plaintiff alleges that Defendants Hudson, Legates, Profaci, Boone, Forbes, and Carrothers refused to preserve evidence of the hazardous area despite his requests for forms, photographs and incident reports.

12

Plaintiff also alleges that in not providing his medical records
or x-rays, FCM and CMS refused to preserve and give to him proof
of his injury.

Although prisoners have a constitutional right to seek
redress of grievances as part of their right of access to courts,
this right is not compromised by the failure of prison officials
to address these grievances. Booth v. King, 346 F.Supp.2d 751,
761 (E.D.Pa. 2004). This is because inmates do not have a
constitutionally protected right to a grievance procedure.
Burnside v. Moser, No. 04-4713, 138 Fed.Appx. 414, 415 (3d Cir.
2005)(not precedential) (citing Flick v. Alba, 932 F.2d 728, 729
(8th Cir. 1991)). Nor does the existence of a grievance
procedure confer prison inmates with any substantive
constitutional rights. Hoover v. Watson, 886 F.Supp. 410, 418-
419 (D.Del.), aff'd 74 F.3d 1226 (3d Cir. 1995). Moreover,
"[t]he failure of a prison official to provide a favorable
response to an inmate grievance is not a federal constitutional
violation." Gordon v. Vaughn, No. CIV. A. 99-1511, 1999 WL
305240, at *2 (E.D.Pa. May 12, 1999) (citing Adams v. Rice, 40
F.3d 72, 74 (4th Cir. 1994)).

Plaintiff filed grievances in attempts to obtain evidence of
his fall, and received responses not to his liking. This does
not obviate the fact, however, that he has no constitutional
right to photographs of the prison, his medical records, or x-

13

rays or to a favorable response to his grievance.  The claims against Hudson, Legates, Profaci, Boone, Forbes, Carrothers, FCM, and CMS for their alleged refusal to preserve evidence are frivolous and will be dismissed.

Construing the complaint liberally Plaintiff may be attempting to allege that because he was not provided with photographs, medical records and incident reports he was somehow denied access to the courts.  See D.I. 2, ¶ IV. 2.  Prisoners have a constitutional right of access to the courts.  See Bounds v. Smith, 430 U.S. 817, 823 (1977).  That right is infringed when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents."  Lewis v. Casey, 518 U.S. 343, 350 (1996).  However, to invoke that access, prisoners must allege actual injury, such as the loss or rejection of a legal claim. Lewis, 518 U.S. at 351; see also Oliver v. Fauver, 118 F.3d 175, 177-178 (3d Cir. 1997) (a court may not presume harm from interference with an inmate's right of access to courts, some showing of impaired access is required).

Here, there are no allegations that Plaintiff was deprived of his right to access the courts.  He filed grievances with the DCC, but they were denied.  Moreover, there are no allegations of actual injury due to denial of access to the courts, or that Plaintiff was precluded from filing a claim for redress of his alleged injury.

14

Therefore, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Hudson, Legates, Profaci, Boone, Forbes, and Carrothers, CMS and FCM. The claims against them will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(b)(1).

### 4. Medical Needs

Count IV contains generally allegations against Defendants CMS and FCM for negligence, malpractice, medical indifference, and emotional distress. Plaintiff also alleges that CMS and FCM failed to provide him with adequate medical treatment.

The allegations in the complaint are that on May 1, 2004, immediately following his slip and fall, Plaintiff was taken to the nurses' station and prescribed pain medication. Plaintiff was administered pain medication from May 1, 2004 through May 17, 2004. On May 15, 2004, he was seen by a physician who indicated that Plaintiff had swelling in his lower back and pain. Again, Plaintiff was prescribed pain medication, and in addition, he was prescribed "rubbing cream." From June 17, 2004 through January 16, 2005, Plaintiff submitted sick call slips for refills of Ibuprofen and also requested a back x-ray. The back x-ray was performed on February 11, 2005, and Plaintiff was advised he would be contacted by the physician if the results were abnormal. Apparently not trusting the medical system, Plaintiff sought to "see" the x-rays with his own eyes and filed a medical grievance

15

to that effect.  The informal resolution attached to Plaintiff's complaint indicates that the results of the x-ray were discussed with Plaintiff.  (D.I. 2, Ex. E.)

While most of the allegations against CMS and FCM lie under negligence theories, Plaintiff does make reference to "deliberate indifference."  He alleges that FCM and CMS caused a "deliberate indifference" when they refused to preserve and give to him proof of his injury, despite their receiving sick call slips and medical grievances filed by him.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-105 (1976).  In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."  Estelle v. Gamble, 429 U.S. at 104-05.

Allegations of medical malpractice are not sufficient to

16

establish a Constitutional violation. White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Additionally, "mere disagreement as to the proper medical treatment" is also insufficient to state a constitutional violation. See Spruill v. Gillis, 372 F.3d 218, 235 (3d. Cir. 2004) (citations omitted).

Plaintiff's claim of "deliberate indifference" is not that FCM and CMS were deliberately indifferent in treating a serious medical need. Rather, he alleges deliberate indifference because these two Defendants did not provide to him medical records, x-rays, and reports. Their alleged refusal to provide these documents is not what can be considered deliberate indifference to a serious medical need, or any other type of constitutional violation. Moreover, it is evident from Plaintiff's allegations and exhibits to his complaint that he received medical treatment following his slip and fall and continued to receive it until the time his back was x-rayed. Plaintiff's main concern appears to be that he was not allowed to personally view his x-ray. Again, this is not a constitutional violation.

Reading the complaint in the most favorable light to Plaintiff, he fails to state an actionable constitutional claim against CMS and FCM. Therefore, the claims against them are dismissed for failure to state a claim upon which relief may be

17

granted pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(b)(1).

## 5.   Supplemental Jurisdiction

Because the complaint fails to state a federal claim, the Court declines to exercise jurisdiction over Plaintiff's supplemental state law claims.  28 U.S.C. § 1367; De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003). Additionally, amendment of the complaint would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002); Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d. Cir. 1976).

## IV.  CONCLUSION

NOW THEREFORE, at Wilmington this $\overline{\partial}\big\rangle$ day of July, 2006, IT IS HEREBY ORDERED that:

1.    The complaint is **DISMISSED** for want of jurisdiction.

2.    Alternatively, the complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) as the claims are either frivolous or fail to state a claim upon which relief may be granted.  Amendment of the complaint would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002); Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976). The Court declines to exercise supplemental jurisdiction over the state law claims.

3.    Plaintiff is not required to pay any previously assessed fees or the $350.00 filing fee.  The clerk of the court is directed to send a copy of this order to the appropriate

18

prison business office.

UNITED STATES DISTRICT JUDGE